UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AUSTIN WILKERSON,                )
        Petitioner               )
                                 )
        v.                       )     Civ. No. 07-10137-MLW
                                 )
UNITED STATES OF AMERICA,        )
        Respondent               )

MEMORANDUM AND ORDER

WOLF, D.J.                                      March 31, 2010

I.   INTRODUCTION

        After an eight-day jury trial, Austin Wilkerson was convicted,
on May 24, 2001, of: (a) possession of a firearm by a felon in
violation of 18 U.S.C. § 922(g)(1); (b) possession with intent to
distribute cocaine base in violation of 21 U.S.C. § 841(a)(1); and
(c) carrying a firearm during and in relation to a drug trafficking
crime, in violation of 18 U.S.C. § 924(c)(1).  The government's
case centered on police officers' observations of Wilkerson on July
11, 2000, when he fled from the officers by car and then by foot
after a traffic stop, and on the subsequent discovery of a handgun
and cocaine in an alley through which he had allegedly run.

        Wilkerson was sentenced on May 10, 2002 to 170 months
incarceration.  The First Circuit affirmed Wilkerson's conviction,
but remanded for resentencing consistent with the Supreme Court's
intervening decision in United States v. Booker, 543 U.S. 220
(2005).  See United States v. Wilkerson, 411 F.3d 1 (1st Cir.

2005).  After a resentencing hearing, Wilkerson was sentenced to 144 months in prison.  He did not appeal that decision.

Wilkerson timely filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The government responded by moving for a summary dismissal of the petition.

Wilkerson's petition alleges that his constitutional rights were violated because his counsel, Miriam Conrad, Esq., was ineffective.  He raises seven specific claims as to Ms. Conrad's alleged ineffectiveness, which can be grouped broadly as: (1) failure to adequately limit prejudicial testimony, particularly with regard to the observation that defendant was grabbing his "budge," or waist, while fleeing; (2) failure to preserve an objection to alleged government vouching for prosecution witnesses during closing argument; and (3) failure to object at sentencing to the characterization of the drugs found as "crack" cocaine.[1]

Although represented by counsel, Wilkerson later personally filed a Motion for Leave to Amend the initial petition.  He sought to add claims that: (1) counsel was ineffective because she rejected a 10-year plea offer without first telling him about it; and (2) counsel was ineffective because she did not object to the finding in the Presentence Report that the cocaine involved was

---

[1] Wilkerson initially raised the additional argument that Conrad failed to raise a confrontation clause claim on appeal pursuant to the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004).  He immediately withdrew this claim in his memorandum of law.

crack, and did not move for the appointment of an expert chemist to help dispute the finding in the Presentence Report. The court denied this motion without prejudice to it being refiled by his attorney by March 1, 2010.   The motion was not refiled and, therefore, is not before the court.

For the reasons described in this Memorandum, summary disposition is appropriate and Wilkerson's petition is being dismissed.   In essence, Wilkerson was not denied effective assistance of counsel because, as the court stated many times throughout the case, Ms. Conrad's work on his behalf was excellent, any imperfections in her efforts were not objectively unreasonable and, in any event, Wilkerson was not prejudiced by the matters about which he now complains.

## II.   THE FACTUAL CONTEXT

The essential facts of Wilkerson's case were succinctly and reliably summarized by the First Circuit in affirming his conviction.   As the First Circuit wrote:

> Boston police officers Tom Joyce and Ed Fleming stopped Wilkerson after he made an illegal U-turn. During the stop, the officers learned he was driving with a suspended license. Officer Joyce asked Wilkerson to step out of the vehicle, but Wilkerson refused. Joyce and Wilkerson struggled for the door while Officer Fleming called for back-up. Wilkerson then drove off and a chase ensued.
>
> The car chase ended when Wilkerson abandoned his vehicle and took off on foot. From about thirty to forty feet away, the officers saw Wilkerson holding his right side

around his waist area. Joyce informed his partner,
"Eddie, be careful, I think he has a gun." Joyce then
broadcast over the radio, "He's reaching for his budge,"
meaning that Wilkerson was reaching for the waistband
area where he thought Wilkerson had a gun. The officers
reported that Wilkerson continued to hold his right waist
area while they followed him, but they did not actually
see a gun.

The officers pursued Wilkerson onto Hartwell Street.
Officer Joyce testified at trial that he was about sixty
feet away when he saw Wilkerson turn into an alley
between houses at 11 and 5 Hartwell on the north side of
the street. Officer Fleming testified that he had just
turned onto Hartwell when he saw the same thing. As
Wilkerson turned into the alley, Joyce slowed down and
peered down the driveway on the south side of 11
Hartwell, between 11 and 15/17 Hartwell, to see if
Wilkerson would come back the opposite way. He did not.
When Joyce reached the alley, he saw Wilkerson climbing
over a six- or seven-foot-high fence, no longer clutching
his waist area. Joyce did not see anything in Wilkerson's
hands or belt as he lowered himself over the fence. Joyce
did not attempt to scale the fence, but instead turned
around and ran up the driveway. There Joyce saw Wilkerson
running west through the backyards toward Cheney Street.
Officers from another police unit arrested Wilkerson when
they caught him running at a slow jog on Maple Street
near Cheney.

After Wilkerson's arrest, officers were ordered to
retrace the route of the foot chase looking for anything
he might have discarded.  Another officer accompanied by
Joyce found a gun and 12.55 grams of crack cocaine in the
alley between 11 and 5 Hartwell.  The items were
described as clean and dry and lying on top of damp,
dirty refuse.  The gun was cocked, loaded, and ready to
be fired.  The key factual dispute at trial was whether
Wilkerson ran up the alley where the gun and drugs were
found, between 5 and 11 Hartwell, or whether he ran up
the driveway between 11 and 15/17 Hartwell, which would
have had to pass before reaching the alley.

Wilkerson, 411 F.3d at 3-4.

4

III.  DISCUSSION

A.  <u>Summary Disposition is Appropriate</u>

As an initial matter, the court finds that this petition may and should be dismissed without an evidentiary hearing. The First Circuit elaborated the test for granting an evidentiary hearing in a §2255 proceeding in <u>United States v. McGill</u>, 11 F.3d 223 (1st Cir. 1993).  As the First Circuit wrote:

> When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. <u>See</u> <u>Mack v. United States</u>, 635 F.2d 20, 26-27 (1st Cir. 1980); <u>United States v. DiCarlo</u>, 575 F.2d 952, 954 (1st Cir. [1978]); <u>cert. denied</u>, 439 U.S. 834 (1978). In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.
>
> We have distilled these principles into a rule that holds a hearing to be unnecessary "when a §2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." <u>Moran v. Hogan</u>, 494 F.2d 1220, 1222 (1st Cir. 1974). In other words, a "§2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" <u>Shraiar v. United States</u>, 736 F.2d 817, 818 (1st Cir. 1984) (citations omitted).

<u>Id.</u> at 225-26 (some citations omitted); <u>see also</u> <u>United States v. Panitz</u>, 907 F.2d 1267 (1st Cir. 1990).

"Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the

petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225.

At various times during the instant case, the court commented on Ms. Conrad's exceptional work on behalf of Wilkerson. For example, after the verdict was returned the court told the jurors that: "you saw a brilliantly tried case. . . . I don't think I've ever seen a case where the lawyering on both sides was so excellent. . . . I think [Wilkerson] certainly understands that he received a very vigorous and excellent defense from [Ms. Conrad]. May 24, 2001 Tr. at 110. After the jury was excused, the court told counsel that, "I think each of you did a superb job and . . . I can't imagine how [Wilkerson] could have been [] more energetically or effectively represented." Id. at 119-20. The following year, after a hearing on a motion to reconsider the denial of a request for a new trial, the court again characterized the argument of counsel as "excellent." May 9, 2002 Tr. at 66. After sentencing Wilkerson, the court told him once more that, "You were very energetically and effectively represented by Ms. Conrad." May 10, 2002 Tr. at 45.

An evidentiary hearing is not necessary or appropriate because, as explained below, Wilkerson's arguments are either contradicted by the record or, if taken as true, do not provide a basis for granting relief.

B. Ineffective Assistance of Counsel

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonable effectiveness; and (2) that counsel's deficient performance was so prejudicial as to undermine confidence in the outcome of the trial. See Strickland v. Washington, 466 U.S. 668, 687-696 (1984); Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996).

"Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Moreover, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted).

The "prejudice" element of an ineffective assistance claim presents another "high hurdle." Argencourt, 78 F.3d at 16. To show prejudice, a claimant must affirmatively prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

1.   <u>Alleged Failure to Exclude or Limit Certain Evidence</u>

Wilkerson argues that Ms. Conrad was ineffective because she allowed government misconduct to "poison[] the well" and violate his right to a fair trial.  These claims focus on counsel's alleged failure to object to harmful and repetitious testimony relating to the police officers' belief that Wilkerson had a firearm in his "budge" area, the police testimony that the drugs found were "crack" cocaine, and police testimony relating to the risk of violence inherent in their encounter with Wilkerson.

More specifically, Wilkerson complains of Ms. Conrad's alleged failure to object to, or otherwise limit: testimony that Officer Joyce warned other officers that Wilkerson was holding his "budge" when Wilkerson fled from his car (Claim 1); "context" evidence related to the risks associated with the pursuing of a person believed to have a firearm (Claim 2); testimony that officers believed that Wilkerson was in possession of a firearm (Claim 3); testimony concerning "crack" (Claim 4); and alleged prosecutorial misconduct associated with offering the foregoing testimony (Claim 5).  In his supporting legal memorandum, Wilkerson claims that Ms. Conrad's tactical decision not to object to the introduction of the Boston Police Department dispatch tape recording, and to use that recording to impeach government witnesses about their failure to mention critical evidence, also amounts to ineffective assistance.

Wilkerson's primary contention that Ms. Conrad failed to

8

object to, or adequately try to limit, the testimony concerning certain matters is not correct. For example, at trial, Ms. Conrad promptly objected to Joyce's statements to Fleming regarding his belief that Wilkerson had a gun. See May 17, 2001 Tr. at 33-34. While her first objection was overruled, Ms. Conrad's subsequent objection to a related question was sustained. Id. at 35-36. She also objected on Federal Rule of Evidence 403 grounds that Joyce should not have been allowed to reiterate his admissible testimony, but was overruled. Id. In addition, Conrad objected to Fleming's testimony that he believed that Wilkerson had a gun. May 21, 2001 Tr. at 49.

Similarly, Ms. Conrad objected to some questions concerning the officers' statements that Wilkerson was observed reaching for his "budge." See, e.g., May 17, 2001 Tr. at 205; May 18, 2001 Tr. at 14-17. While these objections were overruled, limiting instructions were given to the jury as a result of Ms. Conrad's objections. See May 18, 2001 Tr. at 14-17.

Ms. Conrad also attempted on numerous occasions to limit the scope of the testimony of the officers about which Wilkerson now complains, including by raising objections under Rule 403. However, the court ruled that the testimony was relevant for context, and to explain the actions and statements of the officers on the scene, and allowed the testimony subject to limiting instructions. See, e.g., May 17, 2001 Tr. at 34; May 18, 2001 Tr.

9

at 15-17.

It was not unreasonable for Ms. Conrad to decide not to object at trial to the admission of the police dispatch tape. In addressing a pretrial motion in limine, the court expressed the view that the tape would be admissible as an excited utterance under Federal Rule of Evidence 803(2) or as a present sense impression under Rule 803(1). It was foreseeable that an objection to the tape at trial would have been futile. See United States v. Shoup, 476 F.3d 38, 41-43 (1st Cir. 2007) (recording of 911 call describing observations of defendant in possession of a firearm admissible as a present sense impression); United States v. Brito, 427 F.3d 53, 62-63 (1st Cir. 2005)(911 tape admitted as excited utterance where call was made under immediate threat, there existed a clear and present danger to the speaker, and there was no time lapse between observations and statements on the recording). In these circumstances, it was reasonable for Ms. Conrad to decide not to object to the admission of the tape, but rather to use the officers' actual words to attempt to impeach their testimony. For example, Ms. Conrad used the fact that Joyce said Wilkerson was holding his "budge," rather than saying that he saw a gun, to emphasize that no officer claimed to have seen Wilkerson with a firearm. See May 2, 2001 Tr. at 138-39.

It was also reasonable for Ms. Conrad not to object to references to the drugs that were found as crack. As described in

10

§3.B.3, <u>infra</u>, there was ample evidence to prove that the drugs were indeed crack.

Moreover, Wilkerson was not unfairly prejudiced by the admission of any or all of the evidence about which he now complains because that evidence was properly admitted. The dispatch tape was important, reliable evidence of what was transpiring and being observed. "Budge" is not itself an inflammatory term. The references to it were relevant to explain the concerns for the safety of the officers that motivated some of their actions and provided context for their conduct. Similarly, the references to "crack" were accurate and, in any event, not inflammatory or otherwise unfairly prejudicial. Even assuming, without finding, that Ms. Conrad could conceivably have done more to limit the admission of some of the evidence at issue, such trimming would not have created a reasonable probability that the result of the trial would have been different. <u>See</u> <u>Strickland</u>, 466 U.S. at 694.

2. <u>Failure to Object to Government's Closing Argument</u>

Wilkerson next asserts that Ms. Conrad was ineffective because she did not object to the prosecution's vouching for witnesses during closing argument. Because no objection was made, the First Circuit reviewed the prosecutor's statements at closing for "plain error." <u>See</u> <u>Wilkerson</u>, 411 F.3d at 7-8. Using this standard, the court found that the prosecutor's statement that, had officers

wanted to lie they could have stated that they saw Wilkerson with the gun, was not improper vouching. <u>Id.</u> at 8 (citing <u>United States v. Perez-Ruiz</u>, 353 F.3d 1, 9 (1st Cir. 2003) and <u>United States v. Figueroa-Encarnacion</u>, 343 F.3d 23, 29 (1st Cir.2003)). However, the First Circuit found that the prosecutor's repeated claims that officers "didn't stretch the truth here" came "closer to the line." <u>Id.</u> Still, the court found that "there is no plain error, since if there is error, it is not clear or obvious and it does not seriously impair the fairness, integrity, or public reputation of judicial proceedings." <u>Id.</u>

Wilkerson argues that, given the importance of the police witnesses, a different result may have been reached by the First Circuit if an objection had been made and the prosecutor's closing argument was subject to harmless error review, which would have required only a finding that the improper remarks likely affected the jury's verdict. <u>See United States v. Torres-Galindo</u>, 206 F.3d 136, 142 (1st Cir. 2000); <u>United States v. Rodriquez-Barrios</u>, 573 F.3d 55, 74 (1st Cir. 2009). In her affidavit Ms. Conrad states that her "lack of objection to probable vouching statements in the government's closing arguments was not based on any strategy or tactical decision." Conrad Aff., ¶18.

In <u>United States v. Martin</u>, 815 F.2d 818, 823 (1st Cir. 1987), the First Circuit stated that a "prosecutor's concluding flourish during rebuttal ('they told you the truth') was improper.

Literally this was vouching, although it can also be taken in context simply as rhetoric." The prosecutor's statements in rebuttal in the instant case ("they didn't stretch the truth") are comparable and, therefore, similarly improper.

However, the failure of Ms. Conrad to object to the comments was not "below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In Martin, the First Circuit characterized the prosecutor's statement that the witnesses "told you the truth" as a "borderline lapse." 815 F.2d at 823. In deciding Wilkerson's appeal, the First Circuit addressed the statements that the witnesses "didn't stretch the truth" now at issue and wrote that "if there is error, it is not clear or obvious." Wilkerson, 411 F.3d at 8. In view of the closeness of the question concerning whether the prosecutor's statements were improper, Ms. Conrad's failure to object was reasonable, though not in hindsight right.

In any event, Wilkerson has not shown that he was prejudiced by Ms. Conrad's failure to object because the court is not persuaded that "the result of the proceeding would have been different" if she had done so. Strickland, 466 U.S. at 694. In Martin, the First Circuit found that the government's rebuttal argument that the witnesses "told the truth" "at most, amounted to harmless error." 815 F.2d at 823.

Similarly, in United States v. Rosales, 19 F.3d 763, 767-68

13

(1st Cir. 1994), the First Circuit found improper vouching for the veracity of law enforcement witnesses, but held that it constituted only harmless error.  The trial judge had repeatedly instructed the jury that the attorneys' arguments were not evidence.  <u>Id.</u> at 767. The First Circuit concluded that:

> We . . . are convinced that the objectionable remark, viewed in context, and in light of the court's instructions to the jury, did not affect the outcome of the trial.  Defendant's trial lasted for ten days, and each party was afforded one hour in which to deliver its summation.  It is highly unlikely that the jury's verdict could have been the result of this brief remark by the prosecutor.  We conclude that the verdict was based upon the testimony, and the jury's belief that the government's witnesses were credible.

<u>Id.</u> at 768.

Every case is, of course, unique.  However, the instant case is, at best from petitioner's perspective, analogous to <u>Rosales</u>. The closing arguments were made at the end of an eight-day trial. Ms. Conrad vigorously and skillfully argued in her closing that the testimony of the police officers was not credible.  The court instructed the jury to evaluate the credibility of the police officers in the same way that it would evaluate the testimony of other witnesses.  May 24, 2001 Tr. at 87.  The court also told the jurors that "it doesn't matter what the attorneys say."  <u>Id.</u> at 84.

The First Circuit understandably found that the comments now in question did "not seriously impair the fairness" of the trial. <u>Wilkerson</u>, 411 F.3d at 8.

This court finds that the prosecutor's statements did not

14

effect the outcome of the case.   In view of the totality of the
evidence and Ms. Conrad's outstanding, if imperfect, defense of
Wilkerson, the court is confident that the outcome of the trial
would have been the same if the improper statements had not been
made or if Ms. Conrad had successfully objected to them.   See
Strickland, 466 U.S. at 694.   Therefore, Wilkerson has not
surmounted the "high hurdle" of establishing that he was prejudiced
by the improper statements in the government's closing argument.
Argencourt, 78 F.3d at 16.

        3. Failure to Object to Characterization of Drugs as Crack

        Wilkerson  argues  that  during  resentencing  Ms.  Conrad
unreasonably failed to object to the characterization of the drugs
involved as crack cocaine, resulting in erroneous calculation of
the advisory sentencing Guidelines.   The sentencing Guidelines use
the term "cocaine base" but clarify that they are referring only to
"crack," which they describe as "the street name for a form of
cocaine base."   U.S.S.G § 2D1.1(c) Note D.   Thus, Wilkerson is
correct  that  the  government  was  required  to  prove  by  a
preponderance  of  the  evidence  that  the  substance  involved  was
crack, rather than another form of cocaine base. See United States
v. Anderson, 452 F.3d 66, 83-84 (1st Cir. 2006). "This distinction
is important because [the First Circuit has] noted that '[f]orms of
cocaine base other than crack are treated as cocaine hydrochloride
[cocaine powder] for purposes of calculating the GSR [Guidelines

sentencing range].'" <u>Id.</u> at 83 (quoting <u>United States v. Robinson</u>, 144 F.3d 104, 108 (1st Cir. 1998)).

However, in the instant case the credible evidence convincingly established that the substance found was crack cocaine. Specifically, the government's first expert chemist testified that the substance found tested positive for cocaine base, and that there was no chemical difference between cocaine base and crack. The second expert chemist testified that his analysis confirmed that the substance was cocaine base, and stated that cocaine base was known on the street as crack. Finally, Sgt. Det. Daniel Linskey testified about the differences between powder and crack cocaine, and about the appearance of crack cocaine. He stated that the substance in question appeared to be crack cocaine.

Wilkerson has not shown that Ms. Conrad was ineffective at sentencing because there was ample evidence for the court to conclude that the substance involved was in fact crack cocaine. Nor has he shown that any prejudice resulted from Ms. Conrad's failure to challenge the assertion that the substance found was crack because the court was not likely to have been persuaded that insufficient evidence of the drug's identity had been presented. As the First Circuit has explained:

> [O]nce the government laid a proper foundation by introducing a chemical analysis proving that, chemically, the contraband was cocaine base, no further scientific evidence was needed. Instead, the government could bridge the evidentiary gap between cocaine base and crack cocaine by presenting lay opinion evidence (or an opinion

proffered by an expert who possessed practical as opposed
to academic credentials) from a reliable witness who
possesses specialized knowledge (gained by experience in
dealing with crack or familiarity with its appearance and
texture).

United States v. Ferreras, 192 F.3d 5, 11 (1999) (internal
quotations omitted). See also Anderson, 452 F.3d at 84-85
(government satisfied its burden to demonstrate that the substance
was crack cocaine where chemist testified that material contained
cocaine base, and police officer testified that the substance was
"rock cocaine or crack cocaine"); United States v. Martinez, 144
F.3d 189, 190 (1st Cir. 1998) (rejecting claim that government had
not proved drug in question was crack cocaine where government
adduced "competent scientific evidence" to prove that the substance
was cocaine base and "competent lay testimony, noting the
substance's distinctive appearance and texture and identifying it
as crack"); Robinson, 144 F.3d at 109 (court had sufficient
evidence to find substance was crack given testimony of chemist
identifying substance as cocaine base, combined with testimony of
officer drawing on experience and hard, rock-like nature of
substance to identify it as crack).

    As described earlier, in the instant case two chemists
identified the drugs found with the firearm as cocaine base and
Sgt. Det. Linskey, testifying based on his experience, identified
the drugs as crack based on their appearance. Wilkerson has not
suggested, let alone provided any evidence, that any expert would

have testified that the drugs were not crack.  In these circumstances, Ms.   Conrad's failure to object to the characterization of the substance involved as crack was neither ineffective nor prejudicial.  <u>See</u> <u>Acha v. United States</u>, 910 F.2d 28, 32 (1st Cir.1990) (counsel not under obligation to raise meritless claims).


IV.  ORDER

        In view of the foregoing, it is hereby ORDERED that the Government's Motion for Summary Disposition of Petitioner's Motion to Vacate Judgment Under 28 U.S.C. §2255 (Docket No. 7) is ALLOWED and the Petition (Docket No. 1) is DISMISSED.


                                        /s/ Mark L. Wolf
                              UNITED STATES DISTRICT JUDGE